# Exhibit A

Fulton County Superior Court
***EFILED***TV
Date: 4/19/2017 3:34:30 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| COBRA TACTICAL, INC., on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | FILE NO. _____ |
| PAYMENT ALLIANCE INTERNATIONAL INC. and GLOBAL PAYMENTS DIRECT, INC., | ) ) ) | 2017CV288951 |
| Defendants. | ) ) ) | |

### SUMMONS

**TO:**   **Defendant Global Payments Direct, Inc.**
**c/o David L. Green**
**10 Glenlake Pkwy, North Tower**
**Atlanta, GA 30328**

You are hereby summoned and required to file with the Clerk of Superior Court, 136 Pryor Street SW, Atlanta, GA 30303 and serve upon the Plaintiff's attorney, to wit:

E. Adam Webb – Georgia Bar No. 743910
Webb, Klase & Lemond, LLC
1900 The Exchange S.E., Suite 480
Atlanta, GA 30339
(770) 444-9325
Adam@WebbLLC.com

an Answer to the Class Action Complaint which is herewith served upon you, within 30 days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Class Action Complaint. (Plus cost of this action).   4/19/2017

This the _____ day of April, 2017.

Honorable Cathelene Robinson

By: _____

Deputy Clerk

# General Civil Case Filing Information Form (Non-Domestic)

**Court**
☑ **Superior**
☐ State

**County** Fulton

**Docket #** 2017CV288951

**Date Filed** 04/19/2017
MM-DD-YYYY

Fulton County Superior Court
***EFILED***TV
Date: 4/19/2017 3:34:30 PM
Cathelene Robinson, Clerk

**Plaintiff(s)**

Cobra Tactical, Inc.
Last   First   Middle I.   Suffix Prefix   Maiden

Last   First   Middle I.   Suffix Prefix   Maiden

Last   First   Middle I.   Suffix Prefix   Maiden

Last   First   Middle I.   Suffix Prefix   Maiden

**No. of Plaintiffs** 1

**Defendant(s)**

Payment Alliance International, Inc.
Last   First   Middle I.   Suffix Prefix   Maiden

Global Payments Direct, Inc.
Last   First   Middle I.   Suffix Prefix   Maiden

Last   First   Middle I.   Suffix Prefix   Maiden

Last   First   Middle I.   Suffix Prefix   Maiden

**No. of Defendants** 2

**Plaintiff/Petitioner's Attorney**   ☐ **Pro Se**

Webb, E. Adam
Last   First   Middle I.   Suffix

**Bar #** 743910

## Check Primary Type (Check only ONE)

☑ Contract/Account
☐ Wills/Estate
☐ Real Property
☐ Dispossessory/Distress
☐ Personal Property
☐ Equity
☐ Habeas Corpus
☐ Appeals, Reviews
☐ Post Judgement Garnishment, Attachment, or Other Relief
☐ Non-Domestic Contempt
☐ Tort (If tort, fill in right column)
☐ Other General Civil (Specify)

## If Tort is Case Type: (Check no more than TWO)

☐ Auto Accident
☐ Premises Liability
☐ Medical Malpractice
☐ Other Professional Negligence
☐ Product Liability
☐ Other (Specify)

**Are Punitive Damages Pleaded?** ☐ Yes ☑ No

☑ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

Fulton County Superior Court
\*\*\*EFILED\*\*\*TV
Date: 4/19/2017 3:34:30 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| COBRA TACTICAL, INC., on behalf of itself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) **CIVIL ACTION** )      2017CV288951 |
| v. | ) FILE NO. _____ ) |
| PAYMENT ALLIANCE INTERNATIONAL INC. and GLOBAL PAYMENTS DIRECT, INC., | ) ) ) |
| Defendants. | ) **JURY TRIAL DEMANDED** ) ) |

### CLASS ACTION COMPLAINT

Plaintiff Cobra Tactical, Inc., by and through its undersigned counsel, on behalf of itself and all persons and entities similarly situated, submits this Class Action Complaint and alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

### INTRODUCTION

1.       This action seeks declaratory relief, monetary damages, and restitution from Defendants Payment Alliance International, Inc. ("PAI") and Global Payments Direct, Inc. ("Global") arising from their assessment and collection of unauthorized and excessive fees for payment processing services provided to merchants.

2.       In today's business world, the vast majority of merchants must accept payment for goods and services via credit and debit cards to stay competitive.  In order to accept this method of payment, the merchant must utilize a payment processing company.

3.      Merchants rely on the companies that provide this critical service to do so in accordance with the agreed-upon pricing.  Indeed, for many businesses fees for card processing services are likely to be the third highest expense following labor and product costs.

4.      The card processing system can be a difficult one to understand, with many involved parties.  For instance, in addition to the merchant who receives payment and the customer who provides such payment, the processing of a card transaction involves several other parties:

(a).    The Card Issuer – the company that issued the credit or debit card to the customer, which is typically a bank such as Chase or Bank of America, and which charges a fee whenever a customer uses one its cards for a transaction.  These companies charge fees that are usually calculated as a percentage of a transaction plus a per-transaction fee (e.g., 1.65% + $0.20/transaction).  This fee varies based on the type of card used.  For example, the card issuing companies will charge a higher fee for transactions involving a rewards credit card than a card with no rewards program.  These fees are generally known as "interchange rates."

(b).    The Card Network – the card networks (i.e., Visa, MasterCard, Discover, American Express) also charge per transaction fees.  By way of example, Visa assesses a fee known as the "APF" ("Acquirer Processing Fee"), and MasterCard charges a fee known as the "NABU" ("Network Access Brand Usage") fee.  The card networks also charge various additional fees depending on the type of transaction.  These fees are generally known as "assessments."

(c).    The Payment Processor – this is the entity that actually processes the payment through the card network and ensures that whenever a customer pays for an item or service with a credit or debit card, the customer's account is debited and the merchant's account

2

is credited.  Defendant Global is a payment processor.

(d).   The Member Bank – only banks, such as Wells Fargo, HSBC, or Merrick Bank, may be members of card networks.  These member banks "sponsor" payment processors so they may process transactions through the card networks.  PAI and Global work with – and have worked with during the relevant period – several member banks.

(e).   The Merchant Acquirer – this is the company that markets the payment processor's services to merchants.  Merchant acquirers essentially act as a "middle man" between merchants and payment processors.  They enroll merchants in payment processing services and usually provide customer support to the merchant.  Merchant acquirers usually work with independent agents or companies, sometimes known as Independent Sales Organizations (ISOs) or Member Service Providers (MSPs), who sign up merchants.  The merchant acquirer then pays the ISO/MSP based on a percentage of the processing fees obtained from "their" merchants.  PAI is a merchant acquirer and aggressively seeks to enter agency relationships with ISOs/MSPs to sign up merchants on its behalf.  PAI also signs up merchants directly, and so qualifies as an ISO/MSP as well.

5.   Ordinarily, a merchant that desires to accept credit and debit cards as a form of payment contracts with an ISO/MSP and/or merchant acquirer to obtain such services.  This contract sets forth the fees that the merchant will be charged, which commonly consist of two parts:

(a).   "Pass Through" Costs – these charges consist of fees imposed by card issuers and the assessments imposed by card networks.  These are set costs incurred by the member bank that apply universally at any given time, regardless of the type or amount of the transaction or the identity of the merchant.  These costs are set, unavoidable, and are "passed

3

through" to the merchant.

(b).   Payment Processing Fees – these are the fees which the merchant is charged by the payment processor and/or merchant acquirer for payment processing services. These fees are not uniform but can be varied or negotiated by the parties.

6.   The number of involved parties and moving pieces can make it difficult for merchants to understand whether their card processing companies are only charging them fees allowed by their contracts.

7.   Unfortunately, some companies take advantage of this confusion.  They induce "mom and pop" merchants to execute standardized contracts for their services with the promise of straightforward, transparent pricing, but subsequently sneak in mark-ups and junk fees.

8.   These improper fees are assessed for the sole purpose of raising additional revenue at the merchant's expense.  Such additional revenue usually goes straight to the bottom line as more profit.

9.   For several years, Defendants PAI and Global have perpetrated this scheme.  This case challenges the amount and nature of the payment processing fees that Defendants impose. Such fees violate the express terms of PAI's form contract as well as the covenant of good faith and fair dealing.

10.   PAI and Global have adopted a contract that they call the "Card Services Agreement," consisting of a "Merchant Application" form which includes some contractual provisions and a separate "Terms and Conditions" which includes more detailed contractual language. The combined contract is sometimes referred to hereinafter as the "Agreement."

11.   Several pertinent provisions of the adhesive contract are illusory, lack mutuality, are invalid exculpatory clauses, are unconscionable, or are otherwise unenforceable.  If the

contract, or parts of it, are deemed invalid or unenforceable, then Plaintiff will seek the return of the improper fees under the doctrine of unjust enrichment because it would be inequitable for Defendants to retain them.

## PARTIES

12.     Plaintiff Cobra Tactical, Inc. ("Cobra Tactical") is a California corporation that specializes in the sale of firearms and other tactical equipment. It is headquartered in Valencia, California and for several years was a payment processing customer of Defendants.

13.     Defendant PAI is a Delaware limited liability company that is headquartered in Louisville, Kentucky. PAI serves over 85,000 merchants nationwide, including thousands in Georgia. PAI specializes in providing merchant services to gun dealers, convenience stores, restaurants, and medical and dental practices. PAI can be served via its agent for service of process, Corporation Services Company, 40 Technology Parkway S., #300, Norcross, Georgia 30092.

14.     Defendant Global is a New York corporation that is headquartered in Atlanta, Georgia. Global is a payment processor that, according to its websites, services 1.5 million merchants in 29 countries and processes $6.5 billion in transactions and generates $2.6 billion in revenue per year. Global may be served via its agent for service of process, David Green, 10 Glenlake Parkway, North Tower, Atlanta, Georgia 30328.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over Defendants because they are registered to transact business in Georgia and have engaged in a continuous and systematic course of doing business in Georgia by offering their services to thousands of Georgia citizens and companies.

16.     Venue is proper in Fulton County because Defendant Global's registered agent is located in Fulton County.

17.     This Court also has jurisdiction over Defendants and venue is proper in Fulton County pursuant to the forum selection clause found in Defendants' form contract.

18.     Pursuant to their own contractual venue provision, Defendants have expressly consented to suit in this Court.

## COMMON FACTUAL ALLEGATIONS

I.     **Merchants Contract with Defendants for Payment Processing Services.**

19.     According to PAI's website, it "is a leading provider of payment processing solutions for businesses nationwide." It purports to specialize in "finding new, innovative ways to help [customers] increase profits with every financial transaction."

20.     PAI enrolls merchants in payment processing services but does not process payments itself. Rather, such services are provided through Global, the back end payment processing company.

21.     For some higher risk merchants, PAI contracts along with Merrick Bank, rather than Global. Merrick Bank processes transactions through TSYS, a competitor of Global.

22.     Whenever PAI and Global solicit business from a merchant, they provide the merchant with the form Merchant Application which references the Terms & Conditions ("Terms"). Both the Merchant Application and the Terms have been revised periodically but the relevant terms cited or quoted herein have remained substantially the same.

23.     The member bank is also a party and signatory to the Agreement. PAI has worked with several member banks. The member bank – in this instance, HSBC Bank USA, N.A. – is not known to have participated in the improper conduct alleged herein and, as a result, has not been named as a defendant.

6

to the expiration of this term, it often must pay an early termination fee of several hundred dollars.

29.     If a merchant is interested in doing business with Defendants for the specified fees identified in the Application, then they sign it and return it to the PAI agent.

## II.     Contracting.

30.     To engage Defendants' services, merchants must sign the Merchant Application. The Agreement does not take effect, however, until signed by all parties. The Agreement by its own terms states: "This Card Services Agreement shall become effective only upon acceptance by Global Direct, Member and PAI, or upon delivery of indebtedness at such locations as designated by Global Direct for purchase, whichever event shall first occur."

31.     All parties to the Agreement are required to abide by the rules of the card networks, including Visa and MasterCard. Pursuant to the card network rules, the member bank was required to sign the Agreement. E.g., MasterCard Rules, § 7.6.1 (stating that all merchant agreements must be "signed by the Customer," with "Customer" defined to include the member bank). Further, MasterCard requires the contract to state: "The Merchant Agreement is not effective and may not be modified in any respect without the express written agreement of the Customer." Id. at § 7.6.1(1)(b). MasterCard specifically prohibits that the contract "take effect or imply that it takes effect prior to being signed by the Customer." Id. at § 7.6.1(3). Defendants have at least partially adhered to these rules by making clear that the contract does not become effective until signed by all parties.

32.     The Merchant Application includes a signature block for each of the parties. It states "Signing for Payment Alliance Intl., Inc." then includes "Name (printed):", "Title:", and "Date:". The same blanks are included for "Global Payments Direct, Inc." and "Member."

24.     The Merchant Application identifies the fees and charges to which the merchant will be subject *if* it decides to enroll in Defendants' services. The Application very clearly provides that merchants will be subject to two general types of charges.

25.     The first is the pricing method. Under "discount rate" pricing, merchants agree to pay a specified amount for each type of card transaction with such amount being calculated as a percentage of a transaction plus a per-authorization fee. For example, on one account Plaintiff agreed to pay 2.15% of the transaction amount plus 10 cents per transaction for all MasterCard-branded credit card transactions, and 1.85% of the transaction amount plus 10 cents per transaction for all MasterCard-branded debit card transactions. Another option is "interchange plus" pricing where customers pay the actual rates of the card networks plus a reasonable mark-up for Defendants.

26.     In addition to such discount rate pricing or interchange plus pricing, the Application also specifically identifies the second type of charges – "Other Fees" – to which the merchant will be subject. In the case of one of Cobra Tactical's Merchant Applications, for example, such "Other Fees" included a "Statement Fee" of $5.00 per month, a "PAI Secure Fee" of $5.95 per month, and a "Batch/ACH fee" of $.20 per occurrence.

27.     Many other categories of "Other Fees" to which Cobra Tactical could have been subjected were left blank on its Merchant Application, thereby indicating that Cobra Tactical would not be charged these fees.

28.     The Application thus informs the merchant in clear, unambiguous terms, what it will be charged if it agrees to enroll in Defendants' services and how such charges will be calculated. This transparency is very important because the Agreement extends for a set period of time, typically three years. If a merchant desires to end its relationship with Defendants prior

7

33.    There are severe penalties for violations of the card network rules.  Pursuant to MasterCard Rule 5.1, for example, Defendants and HSBC could be subject to an "assessment up to USD 2,500 per day" for *each day* they are not in compliance as to *each merchant*.

34.    It is also true that no *changes* can be made to the Agreement without the written consent of all parties.  This is mandated by the card networks.  E.g., MasterCard Rules, § 7.6.1(1)(b).  The Agreement states: "This Card Services Agreement may be amended only in writing signed by Global Direct, Member, PAI and Merchant . . . ."  The only exceptions are that the card networks may make changes without notice to the merchant, and Global (but not PAI or the member bank) is permitted be modify the Agreement with advance written notice to the merchant.

35.    The Agreement states that: "No provision of this Card Services Agreement shall be deemed waived by any party unless such waiver is in writing and signed by the party against whom enforcement is sought."  Plaintiff did not waive any of the provisions of the Agreement.

**III.    Defendants Systematically Overcharge Merchants.**

36.    PAI sends out monthly invoices that specify the fees merchants have been charged by Defendants.

37.    Over the course of their relationship with Plaintiff and the members of the proposed Class, Defendants charged fees that did not comport with those set forth in the Application and Agreement.

38.    First, Defendants charged certain fee types that are not set forth in the Application.  Among the fees that were charged to Cobra Tactical that are mentioned nowhere in the Application are "SAQ NOT ON FILE" fees.  This fee was initially $9.95 per month and was later increased to $14.95 per month and then to $19.95 per month.  Another example is the

"ONLINE DE" fee which was assessed sometimes dozens of times per month at a cost of 20 cents. Yet another instance of an added fee was the "GLOBAL ATL" assessed in some months.

39.     Second, Defendants improperly raised the price of certain fee types above the amounts set forth in the Application.  With respect to Cobra Tactical, Defendants charged a $7.50 monthly statement fee during several months even though Plaintiff only agreed to pay $5.00 per month for such fee.  Defendants also charged amounts higher than allowed for the "PAI SECURE" fee.

40.     Third, Defendants inflated pass-through charges from the card networks.  For example, Defendants charged Cobra Tactical a "FIXED ACQ NETWORK FEE 1" of $8.00 per month which exceeded the amount set by Visa for such fee.  Other fees of Visa, MasterCard, and Discover were also inflated.

41.     These descriptions are intended only as illustrations of Defendants' improper billing practices.

42.     Merchants that were billed for these and other improper fees in contravention of the Card Services Agreement were disincentivized from terminating their relationship with Defendants because the Agreement obligates merchants to pay hefty early termination fees.

43.     Those that are subject to the termination fee are essentially put to a Hobson's Choice – pay the early termination fee or accept the overbilling.

IV.    **Defendants Endeavor to Legitimize Their Overbilling Via Adhesive Terms.**

44.     To further harm merchants, Defendants have buried onerous, one-side provisions in the adhesive Terms.

45.     The Terms are a boilerplate form that is not negotiable and presented to the merchant on an adhesive, take-it-or-leave-it basis.  The Terms consist of small, non-descript font occupying more than 30 densely-worded paragraphs over several pages.

10

46.     The Terms represent a unilateral effort by Defendants to (a) backtrack from the agreements as to fees that were reached in the Application and (b) immunize themselves from liability for their practices.

47.     The Terms include clauses purporting to:

(a).     give Defendants broad discretion to change the amounts of agreed-upon fees or impose whatever new fees they desire;

(b).     limit Defendants' liability for overcharges;

(c).     limit the statute of limitation for claims related to "billing errors" to *90 days*;

(d).     require merchants to pay attorneys fees in any legal action (regardless of whether Defendants are deemed the prevailing parties);

(e).     prohibit merchants from pursuing their claims in a class action; and

(f).     prohibit merchants from enforcing their right to a jury trial.

48.     These provisions violate public policy, lack mutuality, are illusory, are invalid exculpatory clauses, are unconscionable, and are otherwise void and unenforceable.

## IV.   Defendants' Practices Have Harmed Plaintiff and the Class.

49.     Defendants' wrongful overbilling policies and practices described above harmed Plaintiff and members of the Class.

50.     Cobra Tactical was a merchant customer of Defendants for several years. It was victimized by the overbilling practices described herein. Specifically, it was charged fees that were either not identified in the Merchant Application, were identified as being less than what was actually charged, or were improperly misrepresented as actual fees of the card networks.

11

51.     As a consequence of Defendants' overbilling policies and practices, Plaintiff and the Class have been wrongfully forced to pay unauthorized fees and charges. Defendants have improperly deprived Plaintiff and the Class of significant funds, causing ascertainable monetary losses and damages.

52.     As a consequence of Defendants' improper charges and fees, Defendants have wrongfully deprived Plaintiff and the Class of funds to which Defendants had no legitimate claim.

## CLASS ALLEGATIONS

53.     Plaintiffs bring this action individually and on behalf of the following Class of similarly situated merchants pursuant to O.C.G.A. § 9-11-23 (a), (b)(2), and (b)(3):

> All PAI customers in the United States who paid a fee or charge that was not authorized by the Card Services Agreement.

54.     Plaintiff reserves the right to modify or amend the definition of the proposed Class, or other proposed classes or subclasses, before the Court determines whether certification is appropriate and as the Court may otherwise allow.

55.     Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, the government, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56.     The time period for the Class is the number of years immediately preceding the date on which this Complaint is filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendants remedy the conduct complained of herein.

57.     The proposed Class meets all requirements for class certification. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of

members and the identity of those persons and entities is within the knowledge of Defendants and can be ascertained by resort to Defendants' records.

58.     The claims of the representative Plaintiff are typical of the claims of the Class. Plaintiff, like all other members, was overcharged by Defendants as a result of improper practices, to include the assessment of unauthorized fees.  The representative Plaintiff, like all members of the Class, has been damaged by Defendants' misconduct.  Furthermore, the factual basis for Defendants' misconduct is common to members of the Class, and represents a common thread of conduct resulting in injury to all members of the Class.

59.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

60.     Among the questions of law and fact common to the Class are whether Defendants:

    (a).     Imposed unauthorized fees;

    (b).     Breached contractual provisions and/or the covenant of good faith and fair dealing through their billing practices;

    (c).     Required merchants to enter into standardized account agreements which included unenforceable provisions; and

    (d).     Were unjustly enriched through their billing practices.

61.     Other questions of law and fact common to the Class include:

    (a).     The proper method or methods by which to measure damages, and

    (b).     The declaratory and/or injunctive relief to which the Class is entitled.

62.     Plaintiff's claims are typical of the claims of other members of the Class in that they arise out of the same wrongful billing policies and practices and the same or substantially

similar unconscionable provisions of the Card Services Agreement and other related documents. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

63.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, most Class members could not afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will be unable to obtain redress for their losses and Defendants' misconduct will have occurred without remedy.

65.     Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

66.     The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards for Defendants.

67.     Defendants refuse to correct their conduct and such inaction is generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.  Specifically, Defendants continue to knowingly overbill the Class and to enforce unconscionable or otherwise unenforceable contractual provisions in order to block Plaintiff and the Class members from seeking legal relief.  Class-wide declaratory and/or injunctive relief is appropriate to put an end to these illicit practices.

## CLAIMS FOR RELIEF

## COUNT ONE

### Declaratory Relief

68.     Plaintiff repeats paragraphs 1 through 67 above.

69.     Class-wide declaratory relief is appropriate where Defendants have "acted or refused to act on grounds that apply generally to the class."

70.     Defendants have attempted to (a) backtrack from the agreements as to fees that were reached in the Application and (b) immunize themselves from liability for their practices by burying provisions in the adhesive Card Services Agreement that make it as difficult, dangerous, and costly as possible for merchants to obtain relief from Defendants' overbilling practices.  Such clauses include but are not limited to those purporting to:

(a).     give Defendants broad discretion to change the amounts of agreed-upon fees or impose whatever new fees they desire;

(b).     limit Defendants' liability for overcharges;

(c).     limit the statute of limitation for claims related to "billing errors" to *90 days*;

15

(d). require merchants to pay attorneys fees in any legal action (regardless of whether Defendants are deemed the prevailing parties);

(e). prohibit merchants from pursuing their claims in a class action; and

(f). prohibit merchants from enforcing their right to a jury trial.

71. Such provisions are unenforceable on multiple grounds, including because they are illusory, lack mutuality, and are invalid exculpatory clauses because (a) they are designed to severely restrict remedies and insulate Defendants from liability, (b) are not explicit, prominent, and clear and indeed are set forth in a manner that does not distinguish their importance from other contract terms, and otherwise violate public policy.

72. Moreover, considering the great business acumen and experience of Defendants in relation to Plaintiff and the members of the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

73. A judicial declaration is necessary and appropriate so the parties may ascertain their rights, duties, and obligations with respect to these provisions.

74. The Court should use its equitable powers to declare these provisions to be unenforceable, and at the earliest possible phase of the case.

## COUNT TWO

### Breach of Contract and Breach of the
### Covenant of Good Faith and Fair Dealing

75.     Plaintiff repeats paragraphs 1 through 67 above.

76.     Plaintiff signed Defendants' contract for payment processing services.   As described above, the actions taken by Defendants have violated the specific terms of the form Card Services Agreements with customers.  Defendants are liable for the losses of Plaintiff and the Class that have resulted from Defendants' breaches of the parties' contractual agreements.

77.     Georgia law imposes upon each party to a contract the duty of good faith and fair dealing.[1]  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

78.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of violations of good faith and fair dealing are evasion of the spirit of the bargain, willful rendering of imperfect performance, and abuse of a power to specify terms.

79.     Defendants have breached the covenant of good faith and fair dealing through their practices as alleged herein.

80.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Card Services Agreement, or those obligations are waived.

---

[1] The Card Services Agreement provides that Georgia law applies.

17

81.     Plaintiff and members of the Class sustained damages as a result of Defendants' breaches of the Agreement, as well as the further breaches of the Agreement as modified by the covenant of good faith and fair dealing.

## COUNT THREE

### Unjust Enrichment

82.     Plaintiff repeats paragraphs 1 through 81 above.

83.     Plaintiff, on behalf of itself and the Class, asserts a common law claim for unjust enrichment. This claim is brought only in the alternative and is contingent on all or part of the Card Services Agreement being deemed unenforceable. In such scenario, unjust enrichment will dictate that Defendants disgorge all improper fees.

84.     By means of Defendants' wrongful conduct alleged herein, Defendants knowingly engaged in billing practices against Plaintiff and members of the Class that were unfair, unconscionable, and oppressive.

85.     Defendants knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

86.     As a result of Defendants' wrongful conduct as alleged herein, they have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

87.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

88.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they have received, and are still receiving, without justification, from the imposition of illicit junk fees on Plaintiff and members of the

18

Class in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

89.    The financial benefits improperly derived by Defendants rightfully belong to Plaintiff and members of the Class. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiff and the members of the Class.

90.    Plaintiff and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the proposed Class, requests that this Court enter judgment against Defendants as follows:

1.    Declaring the several challenged provisions of the Card Services Agreement to be unenforceable and enjoining their enforcement;

2.    Declaring Defendants' fee assessment policies and practices to be violative of the Card Services Agreement, wrongful, and unconscionable;

3.    Awarding restitution of all illicit fees at issue paid to Defendants by Plaintiff and the Class as a result of the improper practices alleged herein in an amount to be determined at trial;

4.    Compelling disgorgement of the ill-gotten gains derived by Defendants from their misconduct;

5.    Awarding actual damages in an amount according to proof;

6.    Awarding punitive and exemplary damages;

7.    Awarding statutory damages;

8.     Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

9.     Reimbursing all costs and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

10.    Granting a trial by jury; and

11.    Awarding such other relief as this Court deems just and proper.

DATED this 19th day of April, 2017.

Respectfully submitted,

BY:    WEBB, KLASE & LEMOND, LLC

/s/ E. Adam Webb
E. Adam Webb
  Georgia State Bar No. 743910
Matthew C. Klase
  Georgia State Bar No. 141903

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
(770) 217-9950 (fax)
Adam@WebbLLC.com
Matt@WebbLLC.com

Attorneys for Plaintiff

Fulton County Superior Court
***EFILED***LW
Date: 4/26/2017 9:46:41 AM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

**COBRA TACTICAL, INC., on behalf of itself and all others similarly situated,**

                    Plaintiff(s),

vs.

**PAYMENT ALLIANCE INTERNATIONAL INC, AND
GLOBAL PAYMENTS DIRECT INC.**

                    Defendant(s).

**Case No.: 2017CV288951**

**AFFIDAVIT OF SERVICE**

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Donnie C. Briley, who, first being duly sworn, on oath deposes and states that he/she is a citizen of the United States and 18 years of age or older and is a party having no interest in the above-styled case. Affiant further states that on **April 21, 2017 at 1:16 PM**, I served **Payment Alliance International, Inc.** by personally serving **ALISHA SMITH**, , located at **40 Technology Parkway South, #300** , **NORCROSS, GA 30092** with the following: Summons & Class Action Complaint.

Description of person process was left with:

Sex: **Female** - Skin: **Black** - Hair: **Black** - Age: **35-45** - Height: **5ft8in** - Weight: **150**

                    I declare under penalty of perjury that the foregoing is true and correct.

        Executed on ___4/25/17___

Signed and sworn to before me on
this ___25___ day of ___April___, 20 _17_
by an affiant who is personally known to me
or produced identification.

_____
Notary Public

**Donnie C. Briley**
MLQ Attorney Services
2000 Riveredge Parkway, Suite 885
Atlanta, GA 30328
770-984-7007/800-446-8794

*558986*

LYNETTE LANE
NOTARY
EXPIRES
GEORGIA
JAN 10, 2021
PUBLIC
COBB COUNTY

Webb Klase & Lemond, LLC

Fulton County Superior Court
***EFILED***LW
Date: 4/26/2017 9:46:41 AM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

**COBRA TACTICAL, INC.,** on behalf of itself and all others
similarly situated,

|                          |                                    |
|--------------------------|------------------------------------|
|           Plaintiff(s),  | Case No.: **2017CV288951**         |
| vs.                      | **AFFIDAVIT OF SERVICE**           |
| **PAYMENT ALLIANCE INTERNATIONAL INC, AND GLOBAL PAYMENTS DIRECT INC.** |   |
|           Defendant(s).  |                                    |

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Donnie C. Briley, who, first being duly sworn, on oath deposes and states that he/she is a citizen of the United States and 18 years of age or older and is a party having no interest in the above-styled case. Affiant further states that on **April 21, 2017** at **11:13 AM**, I served **Global Payments Direct Inc.** by personally serving **ROBERT CIESLAK, Legal Administrator (Authorized)**, located at **10 Glenlake Pkwy, North Tower ,** **Atlanta, GA 30328** with the following: Summons & Class Action Complaint.

Description of person process was left with:

Sex: **Male** - Skin: **White** - Hair: **Blonde** - Age: **36-46** - Height: **5ft8in** - Weight: **170**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___4/24/17___

Signed and sworn to before me on
this __24__ day of __April__, 20_17_
by an affiant who is personally known to me
or produced identification.

_____
Notary Public

**Donnie C. Briley**
MLQ Attorney Services
2000 Riveredge Parkway, Suite 885
Atlanta, GA 30328
770-984-7007/800-446-8794

*558987*

Webb Klase & Lemond, LLC