IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COBRA TACTICAL, INC., KAT, LLC d/b/a KA TACTICAL, and EULESS ARMORY, LLC d/b/a ARMORY UP, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYMENT ALLIANCE INTERNATIONAL INC., GLOBAL PAYMENTS DIRECT, INC., and CLEARENT, LLC<br><br>Defendants. | CIVIL ACTION FILE<br><br>NO. 1:17-CV-1827-MHC |

### ORDER

This case comes before the Court on Defendants Payment Alliance International Inc. ("PAI"), Global Payments Direct, Inc. ("Global"), and Clearent, LLC ("Clearent") (collectively, "Defendants")'s Motion to Dismiss Amended Class Action Complaint [Doc. 24].

### I. BACKGROUND

Plaintiffs Cobra Tactical, Inc. ("Cobra"), KAT, LLC d/b/a KA Tactical ("KA"), and Euless Armory, LLC d/b/a Armory Up ("Euless"), individually and

on behalf of all others similarly situated (collectively, "Plaintiffs"), are businesses that allege that Defendants charged them unauthorized and excessive fees for merchant payment processing services. Am. Compl. [Doc. 13] ¶ 1. Merchant payment processing services allow merchants to accept payment for goods and services via credit and debit cards. Id. ¶ 2. Global is a payment processor that "processes the payment through the card network and ensures that whenever a customer pays for an item or services with a credit or debit card, the customer's account is debited and the merchant's account is credited." Id. ¶ 4(c). PAI and Clearent are merchant acquirers, that "enroll merchants in payment processing services and usually provide customer support to the merchant." Id. ¶ 4(e). Plaintiffs are former customers of PAI (which has now been acquired by Clearent). Id. ¶¶ 18-20; 23. Global "serviced the vast majority of PAI's merchant customers." Id. ¶ 24.

The purported contracts consist of a merchant application ("Merchant Application") and terms and conditions ("Terms and Conditions") (collectively, "Card Services Agreements" or "CSAs"). Id. at 6 n.1; ¶¶ 8; 34. PAI provided prospective merchants with the form Merchant Application. Id. ¶ 34. The Merchant Application "states that the merchant is obligated to the Terms [and Conditions.]" Id. ¶ 57. "Both the Merchant Application and the Terms have been

revised periodically but the relevant provisions cited or quoted [in the Amended Complaint] have remained substantially the same."[1] Id. ¶ 34.

Plaintiffs allege that Defendants promised them "straightforward, transparent pricing" but through "separate, fine print Terms [sic] . . . backtrack[ed] from the agreed-upon fees" and "implement[ed] mark-ups by inflating 'pass through' costs." Id. ¶¶ 7-8, 10. Plaintiffs argue that the contracts never became legally binding and, even if they were legally binding, the overcharges breach the terms of the contracts. Id. ¶ 13. Count I of the Amended Complaint alleges unjust enrichment. Id. ¶¶ 152-163. Count II alleges (1) breach of contract and (2) breach of the covenant of good faith and fair dealing. Id. ¶¶ 164-176.

---

[1] Plaintiffs attached the merchant applications for Cobra [Docs. 13-1, 13-2] and KA [Doc. 13-3], as well as a copy of the Terms and Conditions [Doc. 13-4] to the Amended Complaint. Defendants attached a copy of the Merchant Application for Euless to their Motion to Dismiss [Doc. 24-3]. The parties do not dispute the authenticity of these documents. Thus, although the Euless Merchant Application is not attached to the Amended Complaint, the Court may consider it for purposes of the motion to dismiss because it is central to Plaintiffs' claims and is undisputed as to its authenticity. Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); see also Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).

## II.   LEGAL BACKGROUND[2]

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although this pleading standard does not require "detailed factual allegations," mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

When considering a Rule 12(b)(6) motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the

---

[2] Defendants move to dismiss the Amended Complaint "[p]ursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f)." Defs.' Br. in Supp. of Mot. to Dismiss Am. Class Action Compl. ("Defs.' Br.") [Doc. 24-1] at 4. Rule 12(f) states "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Defendants do not state specifically what they would like stricken or otherwise discuss Rule 12(f). Therefore, the Court will not address Rule 12(f).

light most favorable to the plaintiff." FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)). However, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### III.   DISCUSSION

Defendants contend that Plaintiff's Amended Complaint should be dismissed because binding contracts, the CSAs, exist between the parties and therefore (1) Count I, unjust enrichment, is barred as a matter of law; and (2) Count II, breach of contract and breach of the covenant of good faith and fair dealing, is barred because of applicable provisions in the CSAs. Def's Br. at 1-6. Alternatively, Defendants contend that, if the CSAs are not valid, Plaintiff's unjust enrichment claim fails because the entire basis of that claim—that customers were charged fees different than those in the CSAs—is based on the CSAs. Id. at 4. Under this theory, Defendants assert that Plaintiffs were not bound by any contract, voluntarily paid the fees, and were free to "walk away at any time without penalty." Id. at 6.

### A.     Validity of the Contracts

Plaintiffs admit to signing the contracts, but argue these contracts were never binding because Defendants did not sign them. Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss Am. Class Action Compl. ("Pls.' Br.") [Doc. 31] at 7-9. Plaintiffs point to Section 24 of the Terms and Conditions, entitled "Effective Date" which states: "This Card Services Agreement shall become effective only upon acceptance by Global Direct, Member, and PAI, or upon delivery of indebtedness at such locations as designated by Global Direct for purchase, whichever event shall first occur." Terms and Conditions § 24. Under the plain language of this section, there are two ways for the contracts to become effective; the Court will examine each.

### 1.     Effective Upon Acceptance

The Terms and Conditions state that the CSAs may become effective upon "acceptance." Id. Plaintiffs state, without citation, that "the only prescribed method for 'acceptance' is signature." Pls.' Br. at 8. They point to (1) the signature blocks on the Merchant Agreements, (2) the clause in the Merchant Agreements stating that "[t]he Bank must be a principal (signer) to the Merchant

6

Agreement,"[3] and (3) provisions in the Merchant Agreements incorporating card network rules, which explicitly require a bank to sign. Id.

As to the first contention, the mere fact that a contract contains signature blocks does not mean that signature is required to make the contract effective. "Georgia law has long recognized that '[a]ssent to the terms of a contract may be given other than by signatures.'" Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC v. Teledyne Techs., Inc., No. 1:12-CV-0686-JEC, 2013 WL 4806894, at *9 (N.D. Ga. Sept. 9, 2013), aff'd, 606 F. App'x 567 (11th Cir. 2015) (quoting Cochran v. Eason, 227 Ga. 316, 318 (1971)); see also Burson v. Milton Hall Surgical Assocs., LLC, 806 S.E.2d 239, 245 (2017) ("Assent to the terms of a contract may be given other than by signatures . . . . If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound."). Signatures are only required when the contract itself explicitly requires them to become effective. MacDonald v. Whipple, 273 Ga. App. 409, 410 (2005) ("When the intent is manifest that the contract is to be executed by others than

---

[3] This clause (and the similar clause "A Visa Member must be a principal (signer) to the Merchant Agreement") is found in the following places: Cobra Merchant Agreement at 2, 3, 14, 15; KA Merchant Agreement at 2; Euless Merchant Agreement at 9. The Merchant Agreements submitted by both parties are difficult to read and have confusing pagination. The Court will reference the pdf pagination as filed in the ECF system.

7

those who actually signed it, it is inchoate and incomplete, and does not take effect as a valid and binding contract."); see also Turnipseed v. Jaje, 267 Ga. 320, 324 (1996) (holding that where the contract contemplated the sale of property from all three owners of the property, signature by only one made the contract incomplete).

As to the second contention, the phrase "The Bank [or Visa Merchant] must be a principal (signer) to the Merchant Agreement" does not vitiate the formation of the CSAs even if the Bank or Visa Merchant failed to sign the Merchant Agreements. There appear to be two slightly different versions of the Merchant Agreement. In the Euless Merchant Agreement, the above clause is part of a section entitled "Important Member Bank (Acquirer) Responsibilities." Euless Merchant Agreement at 9. Below that section it states "[t]he responsibilities above do not replace the terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Bank is the ultimate authority should the Merchant experience any problems." Id. (emphasis added). With respect to Euless it is clear this clause does not in any way modify Section 24 of the Terms and Conditions.

With respect to the Merchant Agreements for KA and Cobra, both agreements state "[a] Visa Member must be a principal (signer) to the Merchant Agreement." Cobra Merchant Agreement at 2, 3, 14, 15; KA Merchant Agreement

at 2. This clause appears to be in conflict with Section 24 of the Terms and Conditions, which allows the agreement to become binding without signatures. Under Plaintiffs' reading, the validity of the CSAs entered into by Cobra and KA is conditioned upon the signature requirement of this clause and since the signature was not obtained, the agreements never became binding. But under Georgia law, it must be "<u>manifest</u> that the contract is to be executed by others than those who actually signed it" in order for a contract to be considered incomplete and non-binding. <u>MacDonald</u>, 273 Ga. App. at 410 (emphasis added). In other words, the contract must explicitly state that it requires signature by both parties to become effective. Placing this clause separate from Section 24, in a section entitled "Important Member Bank Responsibilities" does not make it "manifest" that this clause overrides Section 24 as to prevent the contracts from taking effect. In addition, if the clause is analyzed as a condition precedent to the formation of the contracts, the outcome is the same.

> Conditions precedent, which are not favored in interpreting contracts, are created by language such as "on condition that," "if," and "provided," or by explicit statements that certain events are to be construed as conditions precedent. In determining whether a contract contains a condition precedent, we look to the language of the agreement itself. If the language is plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further.

Hall v. Ross, 273 Ga. App. 811, 813 (2005) (quotations and citations omitted). There is no language in the clause indicating that the signature is a condition precedent.

As to the third contention, that the Member Agreements "incorporate the card network rules, which explicitly require the banks to sign" (Pls.' Br. at 8), this argument fails for the same reasons—it is not clear that the CSAs were drafted to make the signature a requirement, nor is it clear from the language of the agreement that it is a condition precedent. See New Beginnings Healthcare for Women, LLC v. EVO Payments Int'l, LLC, No. 1:17-cv-950-RWS (N.D. Ga. June 16, 2017) (interpreting similar language). While Plaintiffs may have a cause of action for damages for failure of the VISA Merchant to sign or failure of Defendants to follow the card merchant rules, the failure does not prevent the contracts' formation. Therefore, there is no requirement that the CSAs must be signed to be accepted.

### 2. Effective Upon Delivery of Indebtedness

The second way the contracts can become effective is through "delivery of indebtedness at such locations as designated by Global Direct for purchase . . . ." Terms and Conditions § 24. Plaintiffs do not dispute that they delivered indebtedness, but contend that "there is no proof of where such indebtedness was

delivered." Pls.' Br. at 9.  Under the CSAs, PAI and Global Direct provided imprinters, authorization terminals, printers, software and other equipment to the Merchant.  Terms and Conditions § 6.  The Court reads the language "at such locations as designated by Global Direct for purchase" to mean that when the Merchant uses the equipment provided by Global Direct and/or PAI to deliver indebtedness, the contracts become effective.  Indeed, Terms and Conditions Section 1 states "A MERCHANT'S SUBMISSION OF A TRANSACTION TO GLOBAL DIRECT SHALL BE DEEMED TO SIGNIFY MERCHANT'S ACCEPTANCE OF THE CARD SERVICES AGREEMENT, INCLUDING THE TERMS AND CONDITIONS HEREIN."  The entire basis of Plaintiffs' lawsuit is that the indebtedness was sent to Global Direct and processed, but that they were charged higher fees than they agreed to.  See, e.g., Am. Compl. ¶ 81 (stating Defendants "began to perform payment processing services on their behalf.").  There are no allegations in the Amended Complaint that would support an inference that the debt was not delivered under the contractual terms.  Accordingly, the contracts became effective when Plaintiffs began delivering debt to Defendants.

Where a valid contract exists, unjust enrichment claims are barred as a matter of law.  Donchi, Inc. v. Robdol, LLC, 283 Ga. App. 161, 167 (2007).  As

11

the CSAs are valid contracts, Plaintiffs' unjust enrichment claim, Count I, is hereby **DISMISSED**.

B.     **"Limitation on Liability" Clause**

Defendants contend that Plaintiffs' claims in Count II for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing are barred because of the "Limitation of Liability" clause found in the Terms and Conditions. The relevant portion states:

> It is agreed that in no event will Global Direct, Member or PAI be liable for any claim, loss, billing error, damage, or expense arising out of or relating in any way to this Card Services Agreement which is not reported in writing to Global Direct by Merchant within 60 days of such failure to perform or, in the event of a billing error, within 90 days of the date of the invoice or applicable statement. Merchant expressly waives any such claim that is not brought within the time periods stated herein.

Terms and Conditions § 12. Plaintiffs do not purport to have complied with the notice provision, rather, they contend this clause is not enforceable as it is exculpatory, unconscionable, and vague. Pls.' Br. at 15-23. Finally, Plaintiffs argue that factual issues should be developed as to whether Plaintiffs' failure to provide notice is justified. Id. at 23-25.

1.     **Is the Clause Substantively Valid?**

> [E]xculpatory clauses in which a business seeks to relieve itself from its own negligence are valid and binding in this State, and are not void as against public policy unless they purport to relieve liability for acts

12

of gross negligence or wilful or wanton conduct. Nevertheless, because exculpatory clauses may amount to an accord and satisfaction of future claims and waive substantial rights, they require a meeting of the minds on the subject matter and must be explicit, prominent, clear and unambiguous.

Monitronics Int'l, Inc. v. Veasley, 323 Ga. App. 126, 135 (2013). "An unconscionable contract is one such as no man in his senses, and not under a delusion[,] would make on the one hand, and as no honest and fair man would accept on the other." Hall v. Wingate, 126 S.E. 796, 813 (Ga. 1924).

Plaintiffs contend that the limitation on liability clause has the effect of "*forever bar*[ring] merchants that do not immediately discover and report Defendants' intentional overbilling from *ever* seeking relief" and is therefore exculpatory in nature and should not be enforced. Pls.' Br. at 15 (emphasis in original). Defendants contend that the provision is a notice provision, which "does not restrict the remedies available for any claim" but rather merely requires written notice of a claim within a specific time period. Defs.' Reply Br. in Supp. of Mot. to Dismiss Am. Class Action Compl. ("Defs.' Reply") [Doc. 32] at 8-10. The clause has two requirements: (1) Plaintiffs provide written notice of the claim within a specified time, and (2) Plaintiffs bring their claim within a specified period of time or waive that claim. Terms and Conditions § 12. Both are enforceable under Georgia law.

State and federal courts in Georgia have upheld similar notice requirements that completely bar a cause of action under a contract when not fulfilled. OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah, 477 F. App'x 665, 670 (11th Cir. 2012) ("notice provisions expressly made conditions precedent to coverage are valid and must be complied with unless there is a showing of justification"); Triad Constr. Co. v. Robert Half Int'l, Inc., No. 1:13-CV-3581-ODE, 2016 WL 9051798, at *4 (N.D. Ga. Feb. 24, 2016) (notice provision was not unconscionable and could be enforced), aff'd, 679 F. App'x 748 (11th Cir. 2017) (affirmed on separate grounds); Pillar Dev., Inc. v. Fuqua Const. Co., 284 Ga. App. 858, 860 (2007) (written notice requirement was valid); Orkin Exterminating Co. v. Stevens, 130 Ga. App. 363, 369 (1973) ("The failure to give notice as required . . . is an independent bar to the maintenance of a successful cause of action on the contract.").

Georgia courts also allow parties to contractually shorten a statute of limitations period so long as "the period fixed be not so unreasonable as to raise a presumption of imposition or undue advantage in some way." Rabey Elec. Co. v. Hous. Auth. of Savannah, 190 Ga. App. 89, 90 (1989) (citation and quotation omitted) (holding 120-day statute of limitations period was reasonable); Gen. Elec. Credit Corp. v. Home Indem. Co., 168 Ga. App. 344, 348 (1983) (holding one year

statute of limitations period was reasonable). Recently, another judge in this district found a 90-day notice period to be reasonable. Triad Constr. Co., 2016 WL 9051798, at *4. Georgia courts do not make a distinction between intentional and unintentional conduct, as Plaintiffs urge the Court to do here. In Rabey Electric Co., the underlying lawsuit was very similar to the issues here—whether or not the payments made under the contract were appropriate under the contract terms. Rabey Elec. Co., 190 Ga. App. at 90. Thus, under Georgia law, the clause is not exculpatory or substantively unconscionable.

### 2. Is the Clause Procedurally Valid?

Plaintiffs also contend that the CSAs were procedurally unconscionable. Pls.' Br. at 18-22. Procedural unconscionability looks at the "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." NEC Techs., Inc. v. Nelson, 267 Ga. 390, 392 (1996). Plaintiffs allege that

> Defendants are large payment processing servicers while Plaintiffs are small, "mom and pop" -type merchants. Plaintiffs must accept debit and credit cards to make themselves competitive in the marketplace and thus require payment processing services. They are thus at the mercy of companies such as Defendants that provide such services. Defendants have taken full advantage of this fact by imposing the

15

> decidedly one-sided Terms on Plaintiffs without negotiation or the ability to "opt out" of disfavored provisions.

Am. Compl. ¶ 115. Taking these allegations as true, Plaintiffs have not alleged enough facts to establish procedural unconscionability. In a factually-similar recent case issued in this district, a smaller merchant suing Home Depot contended that a one-year limitations period in a take-it-or-leave-it contract was procedurally unconscionable. NAFRA Worldwide, LLC v. Home Depot U.S.A, Inc., No. 1:12-CV-02808-AT, 2013 WL 12098772, at *7 (N.D. Ga. Aug. 29, 2013). The court rejected this argument, explaining: "The Court acknowledges that Home Depot certainly had more bargaining power and the Court presumes Nafra's assertion that the one-year limitations provision was a take-it-or-leave-it-provision. Without more, however, Nafra cannot establish procedural unconscionability." Id. As Plaintiffs here attempt to base procedural unconscionability on similar facts, they fail to state a claim for procedural unconscionability.

### 3. Is the Clause Vague?

Plaintiffs also contend that it would be premature to dismiss their claims at this stage because there are issues of contract interpretation that would be "inappropriate to resolve on a motion to dismiss." Pls. Br. at 23. They argue that the limitation of liability provision is ambiguous because the clause "failure to perform" is not defined. Id. However, they do not put forth any plausible

16

explanation of the limitation of liability clause that would allow their claims to go forward. Even if the clause "failure to perform" were read out of the paragraph, the paragraph still bars "any such claim . . . not brought within the time periods stated herein." Terms and Conditions § 12. The phrase "any such claim" refers to "any claim, loss, billing error, damage, or expense arising out of or relating in any way to this Card Services Agreement." Id. Because there is no alternative meaning the clause is not technically ambiguous, "that is, reasonably susceptible to more than one meaning . . . ." BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co., No. 16-10978, 2017 WL 3475030, at *2 (11th Cir. Aug. 14, 2017) (citation omitted). As there is no ambiguity to resolve, there is no need for discovery on the issue. Id. at *3 ("It is not proper on a motion to dismiss to read out such contractual language when a party proffers an interpretation reasonably giving import to that language.") (emphasis added).

### 4. Have Plaintiffs Pled a Justification for the Delay in Notification?

Finally, Plaintiffs contend that they have pled facts that allege a justification for failure to provide timely notice. The duty to provide notice "is triggered when an insured actually knew or should have known of the possibility that a claim existed." 105 R.R. St., LLC v. Great Lakes Reinsurance (UK) SE, No. 1:15-CV-00293-ELR, 2016 WL 9454412, at *4 (N.D. Ga. Dec. 21, 2016) (citation and

17

quotation omitted); Edwards v. Fidelity & Cas. Co. of N.Y, 129 Ga. App. 306, 307 (1973) (holding a delay in notice unreasonable as a matter of law because a "reasonable person would be required to act and make positive inquiry"). In determining when a party should know of a claim, courts look to the nature and circumstances of the incident and the immediate conclusions an ordinarily prudent and reasonable person would draw from it. See Longleaf in Vinings Homeowners Ass'n, Inc. v. QBE Ins. Corp., No. 1:13-CV-03132-AT, 2015 WL 11232360, at *5 (N.D. Ga. Mar. 12, 2015).

  Plaintiffs state that their failure to give notice is justified because Plaintiffs were not given statements itemizing all charges (Am. Compl. ¶ 98), overcharges in the statements were extremely difficult to understand (Id. ¶¶ 100-04), and Defendants falsely stated that fee increases were coming from the card networks (Id. ¶¶ 109-12). However, as noted by Defendants (Defs.' Reply at 13-16), the Amended Complaint is based on the very same information that Plaintiffs allege prevented them from discovering the overbilling within the 60-90 day period, and they make no allegations as to why the overbilling could not have been discovered in the initial time period. Under Georgia law, whether a delay is justified generally is an issue of fact to be resolved by a jury. Eells v. State Farm Mut. Auto. Ins. Co., 324 Ga. App. 901, 904 (2013). However, in order to survive a motion to dismiss,

the justification put forth must be plausible. <u>Twombly</u>, 550 U.S. at 570. Here even assuming the allegations pled in the Amended Complaint are true, the explanation does not justify the delay. See <u>Advocate Networks, LLC v. Hartford Fire Ins. Co.</u>, 296 Ga. App. 338, 340 (2009) (holding that delay was not justified as a matter of law where party did not provide a reasonable explanation for the delay). Accordingly, because the limitation on liability clause is valid and Plaintiffs have failed to state a plausible justification for failing to give notice, Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing are barred by the limitation on liability clause.[4]

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Amended Class Action Complaint [Doc. 24] is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 4th day of January, 2018.

_____
MARK H. COHEN
United States District Judge

---

[4] The Court does not reach the remaining issues of whether the class action waiver in the CSAs is valid and binding.